**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| Talvin Johnson, #323094, | ) | Civil Action No. 2:14-cv-768-DCN-WWD |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| | ) | |
| Warden, | ) | |
| Lee Correctional Institution | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The Petitioner, Talvin Johnson, Prisoner No. 323094, a state prisoner

proceeding pro se, seeks habeas corpus relief pursuant to 28 U.S.C. § 2254.  This

matter is before the Court on the Respondent's Motion for Summary Judgment filed on

June 23, 2014. (Dkt. 19, 20).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B),

and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the

instant petition for relief and submit findings and recommendations to the District Court.

Johnson brought this habeas corpus action on March 7, 2014. (Dkt. 1).

Respondent moved for summary judgment[1] and by order filed on June 24, 2014,

---

[1] The Respondent made the following part of the record here:
    1. Appendix, the Honorable Roger L. Couch, Special Circuit Court Judge
    2. Notice of Appeal
    3. Johnson Petition for Writ of Certiorari
    4. South Carolina Supreme Court letter dated October 25, 2010
    5. Letter from the Office of the South Carolina Attorney General dated October 26, 2010,
       filed in lieu of formal Return to Johnson Petition for Writ of Certiorari

pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Johnson was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. 21). Johnson moved before the court for additional time to respond, which motion was granted. On October 27, 2014, Johnson filed his opposition to the summary judgment motion.[2] Hence it appears consideration of the motion is appropriate.

## PROCEDURAL HISTORY

Petitioner Johnson is currently incarcerated in Lee Correctional Institution, a facility of the south Carolina Department of Corrections, pursuant to an order of commitment from the Clerk of Court for Cherokee County. He was indicted by the Cherokee County Grand Jury during the June 7, 2007, Term of the Cherokee County Court of General Sessions for one count of Murder (2007-GS-11-759) and one count of First Degree Burglary (2007-GS-11-760); and during the March 6, 2008, Term of the Cherokee County Court of General Sessions for one count of Attempted Armed Robbery (2008-GS-11-275). (App. 35-6, 39-40, 43-44). The Petitioner was represented by Don Thompson, Esquire, Public Defender for Cherokee County. (App. 1-34).

On April 21, 2008, the Petitioner waived his right to a trial by jury and pled guilty

6. Pro se Response to Johnson Petition for Writ of Certiorari
7. South Carolina Supreme Court Order filed January 13, 2012
8. South Carolina Court of Appeals Order filed April 4, 2013
9. Remittitur dated June 20, 2013
10. South Carolina Court of Appeals' letters from April 2014

[2] In his response in opposition to Respondent's motion for summary judgment filed October 2, 2014, (Dkt. 29), the Petitioner raises new arguments that were not raised in his initial federal habeas action. These new claims are not properly before the court; they should not be considered for that reason, among others.

to all three charges before the Honorable J. Derham Cole, Circuit Court Judge. Id.

Pursuant to a recommended sentence, Judge Cole sentenced the Petitioner to

thirty-five years confinement on the murder conviction, thirty-five years confinement on

the first-degree burglary, and twenty years confinement on the attempted armed

robbery conviction, all to be served concurrently. (App. 32-33, 37, 41, 45).

## FACTS OF THE CRIMES

These are the facts as stated by the Solicitor at the guilty plea hearing. (App.

20-22).

About 4:20 a.m. on April 16, 2007, Chauncey and Tara Bobo and her six-month-old son were sitting on the couch in Tara's apartment at Berkeley Apartments when the defendant kicked in the door. His face was covered. He was armed with a gun. He pointed the gun at them. And he told Chauncey to take off his pants and to give him the money.

Chauncey then told Tara to take her baby to the back part of the room. She did that. She heard some scuffling. She heard Chauncey tell her to call 9-1-1 and she heard a gunshot.

She then went out to the living room and saw that Chauncey had been shot in the right upper chest. He had been shot with a .45 caliber round.

There was an exit wound on his right lower back. The bullet had penetrated his right lung. According to the pathologist, it was a near-contact fatal gunshot wound with powder tatooing around the entrance hole.

The police responded to Berkeley Apartments. They began their investigation. They found a spent .45 caliber shell casing between Chauncey's legs.

They spoke with several individuals who were in the apartment next door when the shooting occurred. They discovered that the defendant had been to the apartment complex that night in just minutes prior to the shooting.

Police began looking for the defendant. His father, Mr. Crosby, brought him to the police department. Officers also received consent to search Mr. Crosby's home where the defendant lived. There they found an open box of .45 caliber rounds, as well as the defendant's tennis shoes with blood spatter on them. They collected that evidence.

The officers continued to investigate and question the defendant. The defendant asked that his father be present in the interrogation room. When his father came in he asked his son if he had been present at the apartments that night. The defendant responded yes, and his father asked him did you shoot him, and he responded yes. He also gave an audio-taped statement confessing

3

that he was there that night.

    He told the police where he had hidden the gun. The police responded to the home of Sandra Norris on [street name redacted], which is where the defendant ran immediately after the shooting. They were able to recover the gun and send that to SLED for testing.

    The victim had over $1,700 in his wallet, Your Honor.  That was found by the coroner.  There was a G. S. R. kit done on the victim.  They did not find the presence of gunshot residue on his hands.

    The gun and the magazine and the shell casing were sent to SLED.  It was determined that the cartridge case found at the scene matched the gun that the defendant had hidden at Ms. Norris' home.

    Also, the tennis shoes were sent to SLED, along with a sample of the victim's blood.  And it was found the victim's blood was on the defendant's tennis shoes.

(App. 20, l 17 - 22, l 22).

## THE POST CONVICTION RELIEF (PCR) PROCEEDINGS

Johnson did not appeal his guilty plea conviction or sentences.  On April 13, 2009, the Petitioner filed an Application for PCR (2009-CP-11-394), in which he asserted claims of ineffective assistance of counsel, involuntary guilty plea, and violation of due process of law. (App. 46-54).  Specifically, in regards to his ineffective assistance of counsel claim, the Petitioner asserted his attorney failed to:

1) act reasonably under the circumstances of the charges and meet and discuss the case with Petitioner as often as necessary;

2) investigate or discuss any defense available to Petitioner;

3) inform Petitioner, prior to taking the plea, that by pleading to Murder he would be pleading to a mandatory 30 years 100%, when Petitioner assumed murder was just another violent crime requiring 85% of the sentence to be served;

4) failed to make Petitioner his top priority due to counsel being overwhelmed with clients;

5) exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances.

(App. 53).

The Petitioner further asserted he could not trust his counsel if he went to trial, and that counsel had advised him if he lost at trial, he would be eligible for the death sentence, or would otherwise definitely receive a life sentence. (App. 53).

The Petitioner also claimed that his guilty plea was not voluntary because he felt threatened that he would possibly receive a death sentence or life, and counsel's poor preparation for trial made the plea involuntary. (App. 54).

Next, the Petitioner claimed that his due process rights were violated because he was sitting in the county jail for eight to eight and one-half months before he was appointed a lawyer, and he had less than four months to prepare for trial with his attorney. (App. 55).

An evidentiary hearing into the matter was held before the Honorable Roger L. Couch, Circuit Court Judge, on January 13, 2010. (App. 61-94). The Petitioner was present and testified. He was represented by Shawn Campbell, Esquire. Id.

The Petitioner testified that his father took him to the police station, so that Petitioner could turn himself in following the incident. Id. The Petitioner stated that he was arrested in April of 2007, but that a public defender was not appointed to represent him until November 2007. Id. The Petitioner further testified that between his appointment in November 2007 and his guilty plea in April 2008, counsel did not prepare the case. Id.

On cross-examination, the Petitioner testified that he met with counsel five or six times after counsel's appointment to his case. Id. The Petitioner testified that his attorney told him that they had no defense since he went into the apartment with a gun, which indicated intent. (App. 97). The Petitioner also testified that he and counsel

never discussed accident as a defense or discussed any strategy. Id.  The Petitioner testified that he wanted to go to trial, but counsel convinced the Petitioner's father that it was in the Petitioner's best interest to plead guilty since he was facing life. Id. Furthermore, on cross-examination, the Petitioner testified that he took the plea offer because it was in his best interest at the time. Id.  The Petitioner stated that he felt he had no choice but to plea guilty since five (5) months was not enough time to prepare for trial. Id.

The Petitioner testified that during the guilty plea, he said what the judge wanted to hear. (App. 97).  On cross-examination, the Petitioner acknowledged that the judge explained to him the 85% requirement, the consequences of his plea, and told the Petitioner that he could speak with his counsel at any time. Id.  However, the Petitioner testified that when the judge explained the consequences of the plea, he did not explain the mandatory day for day part of the Petitioner's murder sentence. Id.

Trial counsel Don Thompson also testified at the PCR hearing. (App. 97). Counsel testified to his extensive experience as a criminal defense attorney. Id.  He testified that he was appointed in November 2007, but that the Petitioner had been in jail for six (6) months because the Petitioner originally turned down assistance from the public defender's office with the intention of retaining counsel. Id.  Counsel testified that he had all the discovery at the time he was appointed. Id.  Counsel also testified that he spoke with the witness that the Petitioner asked him to speak with and the witness claimed he could not remember anything. Id.

Counsel testified that the Petitioner's story remained the same throughout counsel's representation and that the Petitioner did want to go to trial. (App. 97).

6

Nevertheless, counsel testified that the Petitioner wanted him to raise the issue that the crime was not a burglary since the Petitioner alleged one of the victims, Ms. Bobo, had been involved. Id. Counsel testified that Ms. Bobo had not been charged with any crime though and that she vehemently denied any involvement. (App. 97-8). Counsel testified that he told the Petitioner that they had no defense to the murder charge since the Petitioner entered the apartment with a gun and with the intent of robbing them. (App. 98). Counsel also testified that he did not believe he could get a jury charge of accident, based on the circumstances of the case. Id.

Counsel testified that he spoke with the Solicitor's office several times and the Solicitor initially discussed seeking the death penalty. (App. 98). Nevertheless, counsel testified that the Petitioner had given a statement to the police at the Petitioner's father's encouragement and the Solicitor's office did not want to seek the death penalty as a result. Id.

Counsel stated that he received notice that the trial was set for April and informed the Petitioner of that fact. (App. 98). Counsel testified that he also informed the Petitioner at that time that the Solicitor had backed off of the idea of the death penalty and life would be the highest sentence he could receive at trial. Id. Counsel testified that he met with the Petitioner and his father to discuss the case and options. Id. Counsel testified that he was able to talk to the Solicitor and received an offer for thirty-five (35) years, which offer he then presented to the Petitioner. Id. Counsel also testified that he told the Petitioner that he would have to serve the entire sentence for the murder charge and eighty-five (85) percent on the burglary and attempted armed robbery charges. Id. Counsel testified that he felt that the Petitioner understood

7

everything they discussed, but just did not like it. Id.

Judge Couch filed his Order of Dismissal on February 9, 2010. (App. 95-103). In its Order, the judge noted that he had reviewed the testimony presented at the evidentiary hearing, observed the witnesses presented at the hearing, passed upon their credibility, and weighed the testimony accordingly. (App. 96). Furthermore, the judge had reviewed the records of the Cherokee County Clerk of Court regarding the subject convictions, the Petitioner's records from the South Carolina Department of Corrections, the guilty plea transcript, the PCR application, the Respondent's Return thereto, and the legal arguments of counsel. Id.

In his order denying PCR, Judge Couch relied upon the proper standard for finding an attorney's performance is ineffective as enunciated in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692 (1984). (App. 99). The PCR Court found counsel Thompson's testimony to be more credible than that of the Petitioner. Id. In regards to the allegations that counsel failed to properly confer, investigate, interview witnesses and develop a strategy for trial, the PCR Court found no factual basis for those claims. Id. The PCR Court found that Thompson was an experienced criminal trial practitioner. Id. Judge Couch found that he presented persuasive, compelling, and credible testimony at the PCR hearing. Id. Counsel conducted sufficient conferences with the Petitioner during which Thompson discussed the nature of the charges, potential penalties, the Petitioner's version of the facts, the witnesses, possible defenses, and defense strategies. Id. Thompson had also received all discovery material, had fully investigated the case, was aware of the evidence the State would present against Petitioner at trial, and discussed these matters with

8

Petitioner. (App. 99-100). Judge Couch found that counsel interviewed all potential witnesses suggested by the Petitioner and fully developed possible defenses and defense strategy in consultation with the Petitioner. (App. 100). Moreover, the judge found that the Petitioner failed to provide any testimony, evidence or information he believed could have been used in his favor had counsel conducted additional conferences, investigation, or interviews. Id. He noted, "Failure to conduct an independent investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result." Moorehead v. State, 329 S.C. 329, 496 S.E.2d 415 (1998). (App. 100).

Regarding the allegation that his guilty plea was unknowing and involuntary, the PCR Court found the Petitioner completely lacking in credibility respecting that claim. (App. 100). The PCR Court found that the record reflected that the plea was entered into voluntarily, knowingly, and intelligently. Id. The PCR Court found the Petitioner was made aware of the right to a jury trial and rights pertinent thereto as well as the fact that the guilty plea would waive all those rights. Id. The PCR Court also found that the Petitioner was aware of the nature of the offenses, the proper applicable penalties, and the options available to him when he appeared in court to enter his guilty plea to the charges against him. Id. Judge Couch found that counsel Thompson did not improperly pressure or threaten the Petitioner in their discussions about the guilty plea. Id. The judge wrote that counsel did not refuse to assist the Petitioner, but was prepared for trial and provided the Petitioner with his assessment of the strength of the State's case and possible outcome at trial. Id.

The testimony offered at the evidentiary hearing and the guilty plea colloquy

9

established that the Petitioner knowingly and intelligently pled guilty based upon the effective assistance of trial counsel. (App. 100).  The PCR Court additionally found counsel adequately conferred with the Petitioner, adequately sought and discussed plea options, was thoroughly competent in his representation, and that plea counsel's conduct did not fall below the objective standard of reasonableness. (App. 100-01). Likewise, the PCR Court found that the record in this case fully demonstrated that the Petitioner understood the nature of his plea, and that his plea was made freely and voluntarily after being made aware of the sentence possibilities. (App. 101).  Therefore, this involuntary guilty plea claim was denied and dismissed. Id.

As a result, Judge Couch found that the Petitioner had failed in his burden to prove the first prong of the Strickland test – that trial counsel failed to render reasonably effective assistance under prevailing professional norms. (App. 101).  The Petitioner failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Petitioner. Id.  Similarly, the PCR Court found that the Petitioner had failed in his burden to prove the second prong of Strickland – that he was prejudiced by trial counsel's performance. (App. 101).  In sum, the PCR Court concluded that the Petitioner had not met his burden of proving counsel failed to render reasonably effective assistance. (App. 101).  Therefore, relief based upon the allegation of constitutionally ineffective assistance of counsel was denied. (App. 101).

Based on all the foregoing, the PCR Court found and concluded that the Petitioner had not established any constitutional violations or deprivations that would require the PCR Court to grant his application. (App. 101).  Therefore, the application

for PCR was denied and dismissed with prejudice. Id.

Last of all, as to any and all allegations, which were or could have been raised in the application or at the hearing in the matter, but were not specifically addressed in the PCR Court's Order, the PCR Court found that the Petitioner failed to present any probative evidence regarding such allegations. (App. 101). These allegations were not supported by any law and were not addressed at the hearing. Id. Accordingly, the PCR Court found that the Petitioner waived the allegations and failed to meet his burden of proof regarding them. (App. 101-02). The judge denied and dismissed with prejudice any such allegations. (App. 102).

The PCR Court did also advise the parties that in order to secure the appropriate appellate review of his order, notice of appeal must be served and filed within thirty (30) days after receipt by counsel of notice of entry of the PCR Court's order. See Rules 203 and 243 of the South Carolina Appellate Court Rules. (App. 102). The PCR Court noted that post-conviction relief counsel must advise an applicant of the right to seek appellate review of a PCR order. State v. Bray, 366 S.C. 137, 620 S.E.2d 743 (2005). (App. 102). Also, pursuant to Austin v. State, 305 S.C. 453, 409 S.E.2d 395 (1991), an applicant has a right to an appellate counsel's assistance in seeking review of the denial of PCR. (App. 102). Rule 71.1(g), SCRCP, provides that if the applicant wishes to seek appellate review, PCR counsel must serve and file a notice of appeal on an applicant's behalf. (App. 102). The Petitioner was remanded to the custody of the Respondent for the completion of his sentence. (App. 102).

## THE APPEAL FROM THE DENIAL OF PCR

The Petitioner timely served and filed a notice of appeal on or around February

11

24, 2010. (Attachment No. 2).  On appeal, the Petitioner was represented by Kathrine

H. Hudgins, Appellate Defender with the South Carolina Commission on Indigent

Defense, Division of Appellate Defense. (See Attachment No. 3).  The Petitioner's

appeal was perfected with the filing of a <u>Johnson</u>[3] Petition for Writ of Certiorari.

(Attachment No. 3).  In the <u>Johnson</u> Petition, counsel Hudgins argued the guilty plea

was rendered involuntary by the fact that counsel Thompson failed to explain that a

sentence for murder requires day for day service rather than service of eighty five

percent of the sentence.  The Petitioner also filed a <u>pro</u> <u>se</u> Petition in response to the

<u>Johnso</u>n Petition for Writ of Certiorari. (Attachment No. 6).  In his <u>pro</u> <u>se</u> Petition, the

Petitioner also argued  that his guilty plea was involuntary because counsel failed to

properly advise him that the sentence for murder is a mandatory, day for day sentence.

By Order filed January 13, 2012, the Petitioner's appeal was transferred from the

South Carolina Supreme Court to the South Carolina Court of Appeals. (Attachment

No. 7).  By Order filed April 4, 2013, the <u>Johnson</u> Petition was denied by the South

Carolina Court of Appeals. (Attachment No. 8).  In the Order, the Court of Appeals

noted this matter was before it on a petition for writ of certiorari following the denial of

the Petitioner's application for post-conviction relief.  After careful consideration of the

entire appendix as required by <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988),

---

[3] Petitioner's counsel asserted that the petition was without merit and requested permission to withdraw from further representation. <u>See</u> <u>Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988). <u>Johnson</u> sets forth the procedures for counsel to follow when filing meritless appeals in state PCR cases pursuant to  <u>Anders v. California</u>, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). This unique state court procedure provided more protection to the Petitioner than required by the Constitution. See <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) (prisoner, who had no equal protection or due process right to appointed counsel in post-conviction proceedings, also had no right to insist on <u>Anders</u> procedures for withdrawal of appointed counsel when collateral counsel determined direct appeal was frivolous).

the Court of Appeals denied the petition and granted counsel's request to withdraw.

The Remittitur was issued on June 20, 2013. (Attachment No. 13).

## GROUNDS RAISED IN THE INSTANT FEDERAL HABEAS ACTION

The Petitioner complains that he is being held in violation of the Constitution and

laws of the United States for the following reasons verbatim:

Ground One: Ineffective Assistance of Counsel

Supporting facts: Due to the coercion of my appointed attorney. I took a plea of guilt to murder, under the impression that I had no defense for it. Also the fact that he only got one of the three most seriouse charges droped to a lesser including charge and that was the Arm Robbery, upon my plea agreement it was droped to an attemp Arm Robbery. I also asked my attorney to put in for a direct appeal, Due to these facts.

Ground Two: Involuntary Guilty Plea

Supporting facts: During my P.C.R. I was able to properly preserve this claim on the record, prior to taking the plea my attorney didn't make clear the nature of madatory.

Ground Three: Violation of Due Process

Supporting facts: My P.C.R. Attourney never discussed this claim although it's on my P.C.R. application, I was not able to properly preserve this claim on the record. But my claim was the fact that I was not givin a preliminary hearing, after I requested it, and the fact that I stayed in the county jail for such a long period of time without legal representation when the preliminary hearing was called, I had no appointed attorney.

## SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered forthwith if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law. Rule 56, FED.R.CIV.P; see Habeas Corpus

Rules 5–7, 11.  Furthermore, while the federal court is charged with liberally construing

pleadings filed by a <u>pro</u> <u>se</u> litigant to allow the development of a potentially meritorious

case; <u>see</u>  <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519

(1972); the requirement of liberal construction does not mean that the court can ignore

a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the

court assume the existence of a genuine issue of material fact where none exists.

<u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir.1990).

## APPLICABILITY OF THE AEDPA

The instant habeas corpus petition was filed on March 4, 2014.[4]  Accordingly, the

provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") apply

to this case. <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997).  Under the AEDPA, claims

adjudicated on the merits in a state court proceeding cannot be a basis for federal

habeas corpus relief unless the decision was "contrary to, or involved an unreasonable

application of" clearly established federal law as decided by the United States Supreme

Court, or the decision "was based on an unreasonable determination of the facts in light

of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).  State

court factual findings are presumed to be correct and the Petitioner has the burden of

rebutting this presumption.

## STATUTE OF LIMITATIONS

The Respondent argues in his motion, *inter alia*, that the entire Petition is subject

---

[4] This was the date of receipt by the prison mail room stamped by the South Carolina Department of Corrections on the federal habeas petition. (Dkt.13-1, p. 25).  The Petitioner is given the benefit of this earlier date as discussed in <u>Houston v. Lack</u>, 487 U.S. 266, 270-276 (1988).

to dismissal because the Petitioner failed to file his application for a writ of habeas

corpus in federal court within one (1) year following the exhaustion of his state court

remedies.  This limitations period is part of the AEDPA, and runs, under 28 U.S.C. §

2244(d)(1), from the latest of-

> (A) the date on which the judgment became final by the conclusion of direct
>     review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State
>     action in violation of the Constitution or laws of the United States is removed,
>     if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by
>     the Supreme Court, if the right has been newly recognized by the Supreme
>     Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented
>     could have been discovered through the exercise of due diligence.

In addition, § 2244(d)(2) provides that,

> The time during which a properly filed application for State post-conviction or
> other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

This Petition falls under § 2244(d)(1)(A).  Since Petitioner did not appeal his

guilty plea conviction or sentence of April 21, 2008, his state court convictions became

final on May 2, 2008, ten (10) days after his guilty plea.  That was the day after which

the Petitioner's opportunity to file a notice of appeal to challenge his conviction and/or

sentence expired. See Rule 203(b)(2), SCACR (notice of appeal must be filed within

ten days of imposition of sentence); see also  Crawley v. Catoe, 257 F.3d 395, 398

(4th Cir. 2001).  The Petitioner would have had 365 days from May 2, 2008, to file his

petition for federal habeas corpus relief.

The statute of limitations which began to run on May 2, 2008, continued to run

15

until April 13, 2009, the date the Petitioner filed his Application for Post-Conviction Relief.  Almost the entire habeas limitations period had expired at that time; three hundred and forty-six (346) days elapsed in that period.  The Petitioner had only nineteen (19) days left to file his federal habeas petition after the conclusion of his state collateral action.

The statute of limitations remained tolled during the pendency of the PCR action which began on April 13, 2009, and lasted until the Remittitur for the PCR Appeal was issued on June 20, 2013. See, e.g., Ott v. Johnson, 192 F.3d 510 (5th Cir.1999) (tolling does not include 90 days for United States Supreme Court certiorari petition from final denial by state's highest court of collateral action), cert. denied, 529 U. S. 1099 (2000); Harris v. Hutchinson, 209 F.3d 325 (4th Cir. 2000) (running clock from when state appellate court denied leave to appeal denial of state post-conviction petition); Mays v. Hickman, No. 98–56769, 2000 WL 538131 at 1 (9th Cir. 2000); Drafts v. Mavnard, No. 02–120, 2002 WL 32710121 (D.S.C. Aug. 6, 2001), appeal dismissed, 2002 WL 31430540 (4th Cir. Oct. 31, 2002).

Thus the Petitioner's allowable time to file in federal court under the AEDPA expired on July 9, 2013, nineteen (19) days after the Remittitur was issued.  The Petitioner filed the instant petition two hundred thirty eight (238) days too late.

## EQUITABLE TOLLING OF THE STATUTE OF LIMITATIONS

Here, the Petitioner argued that he is entitled to equitable tolling of the limitations period because he wrote to the South Carolina Court of Appeals in January 2014 to inquire about the status of his petition for a writ of certiorari from the denial of PCR.  The Petitioner filed a copy of a letter to him from Appellate Defender Kathrine

16

Hudgins dated April 15, 2014, and a copy of the court's letter to the Petitioner dated February 3, 2014,[5] which informed the Petitioner that his petition for a writ had been denied on April 4, 2013. Hudgins wrote the Petitioner that she did not receive a copy of the denial until the Court of Appeals wrote her and enclosed a copy of the Petitioner's letter to the court which the court received on January 27, 2014. As mentioned, the instant habeas corpus petition was filed on March 4, 2014.

Importantly, the June 20, 2013, Remittitur from the Court of Appeals shows that the Petitioner was notified and provided with a copy of the Remittitur, over eight (8) months prior to his habeas filing, but the Petitioner does not mention that fact. (Attachment No. 9). Likewise he has not shown that he was in any way monitoring the progress of his appeal from the denial of PCR for almost ten (10) months. Nor did the Petitioner explain what prevented him from filing for PCR for almost one (1) year after his conviction became final.

It is true that in a proper case the AEDPA's statute of limitations is subject to equitable tolling, which could, in effect, extend the final date for filing a habeas petition. In 2010, the United States Supreme Court considered the issue and also held that Section 2244 "is subject to equitable tolling in appropriate cases." Holland v. Florida, 560 U.S. 631, 130 S.Ct. 2549, 2560, 177 L.Ed.2d 130 (2010); cf. Pace v. DiGuglielmo, 544 U.S. 408, 418 n. 8, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (noting Court assumed without deciding that AEDPA's statute of limitations could be equitably tolled for

---

[5] In addition, the Petitioner did not address if or when he received the letter from the Court of Appeals to him dated February 3, 2014, responding to his inquiry and informing him of the denial of his petition.

purposes of that decision because respondent assumed it did).  The Holland Court

reiterated its prior holding in Pace that the statute would be equitably tolled "only if [the

petitioner] shows '(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstance stood in his way' and prevented timely filing." Holland, 130

S.Ct. at 2562 (quoting Pace, 544 U.S. at 418).

The Fourth Circuit has underscored the very limited circumstances in which

equitable tolling of the AEDPA's limitations period will be permitted, holding that a

habeas Petitioner "is only entitled to equitable tolling if he presents (1) extraordinary

circumstances, (2) beyond his control or external to his own conduct, (3) that prevented

him from filing on time." Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003).  Thus, rarely

will circumstances warrant equitable tolling of the AEDPA limitations period:

> [A]ny invocation of equity to relieve the strict application of a statute of limitations
> must be guarded and infrequent, lest circumstances of individualized hardship
> supplant the rules of clearly drafted statutes. To apply equity generously would
> loose the rule of law to whims about the adequacy of excuses, divergent
> responses to claims of hardship, and subjective notions of fair accommodation.
> We believe, therefore, that any resort to equity must be reserved for those rare
> instances where—due to circumstances external to the party's own conduct—it
> would be unconscionable to enforce the limitation period against the party and
> gross injustice would result.

Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir.2000).

The Respondent here has borne his burden of asserting the AEDPA's statute of

limitations, Hill v. Braxton, 277 F.3d 701, 705 (4th Cir. 2002); the Petitioner then must

bear the burden of establishing that his petition is timely or that he is entitled to the

benefit of the equitable-tolling doctrine. Rouse, 339 F.3d at 246.  He has not done so.

The undersigned is of the opinion that the Petitioner's untimely filing should not

be excused by equitable tolling under Holland's two-pronged test.  First, the Petitioner

18

has not demonstrated he was reasonably diligent in pursuing his rights below.  He has

provided no explanation, much less shown some extraordinary circumstance

concerning  why he waited almost his full one year limitations period to file his PCR.

Second, the record reflects that he was sent the Remittitur when it came down from the

Court of Appeals.  He's offered no reason why he did not file then.  Third, he has not

shown that he acted diligently in monitoring his appeal form the denial of PCR relief

even if he did not get the Remittitur the Court of Appeals indicated it sent to him.  It

simply does not appear that the Petitioner diligently pursued his rights.  It cannot be

said that this is a case in which it would be unconscionable to enforce the limitation

against the Petitioner. <u>Harris</u>, at 330.

CONCLUSION

Accordingly for the aforementioned reasons, it is recommended that because the

Petitioner has not satisfied at least the first-prong of <u>Holland</u>'s two-pronged test for

equitable tolling, the court could end its analysis here and dismiss the Petition as

untimely under the AEDPA.  It is further RECOMMENDED that a certificate of

appealability be denied.[6]

---

[6]    A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 327 (2003); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000); <u>Rose v. Lee</u>, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

November 4, 2014
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).